IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES P. CAMPBELL,                )
                                  )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    Civil Action No. 06-998
                                  )
UNITED PARCEL SERVICE, INC.,      )
DAVID ZIMMERMAN and CATHY         )
CLINE,                            )
                                  )
          Defendants.             )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                              October 9, 2007

          This is an action alleging disability discrimination in

violation of the Americans With Disabilities Act 42 U.S.C. §

12101, et. seq., ("ADA") and the Pennsylvania Human Relations

Act, 43 Pa. Con. Stat. § 951, et. seq., ("PHRA").  Plaintiff,

James P. Campbell, is a Package Car Driver for defendant United

Parcel Service ("UPS").  Plaintiff alleges that defendant UPS,

aided and abetted by defendants David Zimmerman and Cathy Cline,

denied him a reasonable accommodation, harassed him and

retaliated against him on the basis of his disability, diabetes

mellitus.  Defendants have filed a motion for summary judgment,

[Doc. No.  49], and contend that plaintiff is not a qualified

individual with a disability as defined by either the ADA and/or

the PHRA.  Defendants further argue that plaintiff has failed to

adduce any evidence to support his hostile work environment and

retaliation claims.  For the reasons set forth below, defendants'
motion for summary judgment will be granted.


I.    BACKGROUND

Unless otherwise indicated, the facts set forth below
are undisputed.

Since 1993, plaintiff has been employed by UPS as a
Package Car Driver at its Thornburg Center in Crafton,
Pennsylvania.  The Thornburg Center is part of UPS's Laurel
Mountain District.  Plaintiff is a member of the Teamsters Union
Local 249 and, as such, his employment is governed by the
provisions of the National Master United Parcel Service Agreement
and Western Pennsylvania Supplemental Agreement.  Each UPS
District has a Human Relations and Labor Department.  Defendant
David Zimmerman is employed by UPS as the Laurel Mountain
District Workforce Planning Manager.  Defendant Cathy Cline is
employed by UPS as the Laurel Mountain District Occupational
Health Manager.

Plaintiff suffers from chronic pancreatitis.  In June
of 2000, plaintiff went on long-term disability and social
security disability due to his pancreatitis and the removal of
his spleen and pancreas[1].  After the surgery, plaintiff developed

---

[1]     Although plaintiff has unfortunately suffered from a
wide variety of physical ailments, the only impairment
he is alleging here is his diabetes mellitus.  He is

2

diabetes mellitus, or insulin-dependent diabetes.  As a result of his condition, plaintiff needs to regularly take insulin.  As long as he does so, plaintiff testified he is not restricted in the major life activities of caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or any other major life activity.

In May of 2005, plaintiff sought to return to work as a Package Car Driver.  UPS requires its package car drivers to meet all of the applicable requirements as specified by the United States Department of Transportation ("DOT").  The DOT has promulgated regulations through the Federal Motor Carrier Safety Administration ("FMCSA") that prohibit individuals who have diabetes mellitus from driving vehicles that weigh more than 10,000 pounds, absent an exemption.  The package car plaintiff drove before he went on leave weighed more than 10,000 pounds. The majority of UPS package cars weigh more than 10,000 pounds. According to defendants, at the Thornburg Center, where plaintiff worked and had seniority, all of the package cars used on full-time commercial and residential routes weigh over 10,000 pounds.

The FMSCA maintains a federal Diabetes Exemption Program.  Plaintiff had not received an exemption through the

---

also only seeking redress for the events that occurred
between May of 2005, when he sought to return from his
medical leave of absence, and December of 2006, when
defendants returned him to his position as a Package
Car Driver.

FMSCA when he first sought to return to work in May of 2005. Accordingly, defendant did not return him to his previous position as a Package Car Driver.

UPS has a procedure for responding to requests for job-related accommodations.   In accordance with this procedure, plaintiff's request was referred initially to the District Workforce Planning Manager, defendant David Zimmerman, and the District Occupational Health Manager, defendant Cathy Cline.

In connection with plaintiff's request for accommodation, UPS asked that plaintiff submit medical information.  On or about May 26, 2005, plaintiff provided UPS with a letter from his treating physician.  Plaintiff's physician opined that plaintiff had no impairments and was not restricted from working.  On June 6, 2005, UPS informed plaintiff that it did not consider him to be a qualified individual with a disability and, therefore, he was ineligible for an accommodation.   Thereafter, on June 7, 2005, plaintiff's physician sent UPS another letter stating that plaintiff suffered from diabetes mellitus and, as a result of the DOT regulations, was prohibited from returning to work as a Package Car Driver.

UPS has a "Diabetes Protocol."   This protocol applies to drivers who have diabetes mellitus and are ineligible under DOT regulations to drive vehicles over 10,000 pounds.  Under the protocol, these drivers may be permitted to drive vehicles under

4

the 10,000 pound threshold.  The protocol provides that "[d]river candidates with insulin-treated diabetes mellitus (ITDM) or visual impairments will be individually assessed upon request to determine their ability to safely operate UPS vehicles weighing 10,000 pounds or less."  The protocol requires drivers to participate in "all aspects of the Medical Evaluation Program" which includes "self-monitoring, diabetes education and medical care."  The protocol further requires that "[a]s a part of the initial certification process each ITDM driver shall complete a formal diabetes education program with a certified diabetes educator (CDE)."  After the initial certification process, the employee is to meet with the CDE periodically.

In July of 2005, defendant Cline sent plaintiff the forms required to be considered under the Diabetes Protocol. Plaintiff returned the forms and, based on the information plaintiff provided, UPS deemed plaintiff eligible for the Diabetes Protocol.  Only three (3) package cars assigned to the Thornburg Center were under 10,000 pounds.  According to defendants, these vehicles were not used on any of the regular full-time package routes.  In September of 2005, plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC").

On October 5, 2005, defendant Zimmerman sent plaintiff a letter to inform him that "we are aware of no available

position at UPS at this time for which you are qualified and capable of performing the essential job functions with or without reasonable accommodation." On January 4, 2006, plaintiff filed a grievance and alleged that UPS violated the collective bargaining agreement by refusing to allow him to displace a part-time inside employee. UPS, plaintiff's union and plaintiff met in late January 2006 to address plaintiff's grievance. UPS contends that it learned at that meeting, for the first time, that plaintiff had applied for a FMSCA exemption. Plaintiff contends that UPS had been on notice since September of 2005 that he had applied for an exemption. UPS then unconditionally offered plaintiff two (2) different positions: (1) a part-time inside bargaining unit position; or (2) two split-shift inside bargaining unit positions.

Plaintiff rejected UPS's offer to return to work, and filed another charge of discrimination with the EEOC. The EEOC issued plaintiff a "dismissal and notice of rights" for both charges of discrimination on May 31, 2006. Plaintiff filed this action on July 25, 2006.

In November of 2006, plaintiff obtained an FMSCA exemption. On or about December 15, 2006, UPS returned plaintiff to his prior position as a Package Car Driver. Plaintiff currently works full-time Monday through Friday and is assigned to a route which is a combination of commercial and residential

addresses.   Plaintiff drives a vehicle in excess of 10,000 pounds, completes 105-110 delivery stops and seventeen (17) scheduled pickups daily, and has had no difficulty performing his job.  Plaintiff's diabetes is currently controlled by medication and does not affect his job performance in any way.  On April 3, 2007, after plaintiff's grievance was heard by the West Pennsylvania Area Panel Grievance Committee, plaintiff's grievance was denied.

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted).

If, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, Rule 56 mandates the entry of summary judgment.   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The mere existence of some

7

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>Liberty Lobby</u>, 477 U.S. at 247-48.

It is on this standard that the court has reviewed the defendants' motion for summary judgment and plaintiff's response thereto.  Based on the pleadings and evidence of record, and the briefs filed in support and opposition thereto, the court concludes, as a matter of law, that plaintiff is not a qualified individual with a disability nor did defendants regard him as a qualified individual with a disability.  Accordingly, the court will grant defendants' motion for summary judgment.


III.  <u>DISCUSSION</u>

Plaintiff alleges in Count I that defendant UPS discriminated against him in violation of the ADA by: (1) refusing him a reasonable accommodation that would have allowed him to return to his prior position as a package car driver; (2) subjecting him to a hostile work environment; and (3) retaliating against him for filing a charge of disability discrimination with the EEOC.  Plaintiff further alleges in Count II that defendants' conduct violated the PHRA.  In Count III, plaintiff contends that defendants Zimmerman and Cline aided and abetted defendant UPS's allegedly discriminatory acts in violation of the PHRA.  In the alternative, plaintiff contends

8

that defendants violated the ADA and PHRA in that they "regarded" him as disabled[2].

Defendants argue that plaintiff has not established that he is a qualified individual with a disability nor has he established that they regarded him as being a qualified individual with a disability. Thus, defendants argue, plaintiff is not protected by either the ADA or the PHRA. For the reasons set forth below, the court agrees with defendants.

A. Legal Principles

The ADA prohibits an employer from discriminating against " ... a qualified individual with a disability because of the disability of such individual ... ." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Supreme Court has interpreted this language to mean that a "qualified individual" must be able to meet the job's requirements in spite of his disability. Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979).

---

[2]    The court of appeals has held that Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts." Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Thus, we will treat plaintiff's PHRA claims as "coextensive with his ADA" claims, id., except with regard to the liability of the individual defendants discussed infra.

Consequently, under the ADA, if an individual's physical disability is such that he cannot perform the essential requirements of the job, he is not a "qualified individual."

Under the ADA, a "disability" is:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such an impairment; or

(c) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (citations omitted). In this context, adverse employment decisions include "refusing to make reasonable accommodations for a plaintiff's disabilities." Id.

B.   Actual Disability

To establish that he has an "actual disability," as defined by the ADA, a plaintiff must initially prove that he or she has a physical or mental impairment. Toyota Motor Mfg., Ky.,

10

Inc. v. Williams, 534 U.S. 184, 194 (2002).  Merely having an
impairment, however, does not make one disabled for purposes of
the law.  Id.  Rather, plaintiffs "also need to demonstrate that
the impairment limits a major life activity."  Id. at 195.
Although "[t]he ADA itself does not comprehensively define the
meaning of 'major life activity' ... it does specifically direct
that the statute be construed so that it meets the standards set
forth in the Rehabilitation Act of 1973, 29 U.S.C. § [701] et
seq., and the regulations issued thereunder."  Fiscus v. Wal-Mart
Stores, Inc., 385 F.3d 378, 382 (3d Cir. 2004).  The regulations
provide a list of examples of "major life activities," including:
caring for one's self, performing manual tasks, walking, seeing,
hearing, speaking, breathing, learning, and working.  45 C.F.R.
§ 84.3(j)(2)(ii).

Courts must determine whether an individual has a
disability on a case-by-case basis.  Sutton v. United Air Lines,
Inc., 527 U.S. 471, 483 (1999).  Thus,

> [i]t is insufficient for individuals
> attempting to prove disability status under
> this test to merely submit evidence of a
> medical diagnosis of an impairment.
> Instead, [plaintiffs must] "prove a
> disability by offering evidence that the
> extent of the limitation [caused by their
> impairment] in terms of their own experience
> . . . is substantial."

Toyota, 534 U.S. at 198 (quoting Albertson's, Inc. v.
Kirkingburg, 527 U.S. 555, 567 (1999)) (second and third

11

alterations in original).

In <u>Sutton</u>, <u>supra</u>, the Supreme Court held that, when analyzing a plaintiff's impairment, the court must consider mitigating or corrective measures.  The Supreme Court concluded that "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantial limits' a major life activity."  <u>Sutton</u>, 527 U.S. at 482-83.  Notably, the Supreme Court observed that to hold otherwise would lead to the absurd result that "[a] diabetic whose illness does not impair his or her daily activities would therefore be considered disabled simply because he or she has diabetes."  <u>Id</u>. at 483.

Here, it is undisputed that plaintiff has diabetes mellitus.  Plaintiff testified that his diabetes is controlled by medication and, as long as he takes his medication, does not impair him in any way.  Thus, it is clear that plaintiff is not, as a matter of law, disabled as defined by the ADA.

C.   <u>"Regarded As" Disabled</u>

Plaintiff contends, however, that since DOT regulations prohibited from driving a package car, defendants regarded him as substantially impaired in the major life activity of working. The court of appeals has held that a person is "regarded as" having a disability if the person:

> (1) Has a physical or mental impairment that
> does not substantially limit major life

12

activities but is treated by the covered
entity as constituting such limitation;

(2) Has a physical or mental impairment that
substantially limits major life activities
only as a result of the attitudes of others
toward such impairment; or

(3) Has [no such impairment] but is treated
by a covered entity as having a
substantially limiting impairment.

Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir. 1999)
(citing 29 C.F.R. § 1630.2(l)).  The court of appeals has held
that "the definition of 'substantially limits' remains the same
as it does in other parts of the statute - i.e., if the
individual is attempting to establish that the employer believed
the individual to be limited in the life activity of 'working,'
then 'working' must encompass a broad class of jobs."  Tice v.
Centre Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001).

        Plaintiff relies on the letter defendants sent to him
on October 5, 2005.  In that letter, defendant Zimmerman stated
that "we are aware of no available position at UPS at this time
for which you are qualified and capable of performing the
essential job functions with or without reasonable
accommodation."  Plaintiff contends that this statement
establishes that defendants regarded him as incapable of working
a broad range of jobs.

        Placed in context, however, it appears that defendant
Zimmerman's statement referred to plaintiff's inability to comply

13

with the DOT regulations by obtaining an FMSCA exemption which would have allowed him to return to his position as a package car driver.  There is no dispute that plaintiff sought to be returned to a full-time position and that there were no full-time positions available at the Thornburg Center that did not require driving a package car in excess of 10,000 pounds.  There is also no dispute that UPS subsequently offered plaintiff the choice of either a part-time position or two split-shift positions and plaintiff rejected this offer.  Defendants clearly considered plaintiff qualified and capable of performing these jobs, with or without accommodation.  Thus, plaintiff has failed to adduce any evidence to establish that defendants regarded him as substantially impaired in the major life activity of working.

> D.  <u>Retaliation</u>

Plaintiff also contends that defendants retaliated against him for initially seeking an accommodation in May of 2005 and for filing a charge of discrimination in September of 2005. In order to state a prima facie case of retaliation in violation of the ADA, plaintiff must establish: (1) he engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.  <u>Williams</u>, 380 F.3d at 759.  As the court of appeals noted "[u]nlike a claim for

14

discrimination under the ADA, an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA."  Id. at n. 2.

Claims of retaliation under the ADA are analyzed in the same manner as claims of retaliation brought pursuant to Title VII, 42 U.S.C. § 2000e-3(a).  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).  In Burlington N. & Sante Fe Ry. Co. V. White, 126 S. Ct. 2405 (2006), a Title VII case, the Supreme Court held that an adverse employment action, in the context of a retaliation claim, is an action which is "materially adverse."  Id. at 2415. An action is "materially adverse" if "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Id.

Here, plaintiff contends that UPS failed to send him the appropriate "diabetes protocol" forms in retaliation for his request for accommodation in May of 2005.  Further, he contends that UPS informed him in October of 2005 that there were no positions available for which he was qualified with or without accommodation in retaliation for filing a charge of discrimination with the EEOC.

Assuming, arguendo, that plaintiff engaged in protected activity, he has failed to establish that defendants took any materially adverse action against him.  After plaintiff requested

15

an accommodation, he filed a charge of discrimination with the EEOC.  After that, he filed another charge of discrimination. Further, it is undisputed that, subsequent to his request for accommodation, plaintiff did ultimately receive the appropriate forms.  It is also undisputed that, after he filed a charge of discrimination with the EEOC, UPS offered him two positions which he rejected.  Accordingly, plaintiff cannot show that defendants retaliated against him in violation of the ADA.

E.   Hostile Work Environment

Plaintiff has adduced no evidence that defendants, acting either singly or in concert, subjected him to a hostile work environment because of his disability, actual or perceived.

F.   Violation of the Collective Bargaining Agreement

Plaintiff seems to argue that defendants violated the ADA by violating the collective bargaining agreement and refusing to allow him to displace a part-time inside bargaining unit employee as a reasonable accommodation.  As set forth above, plaintiff is not a qualified individual with a disability, nor was he regarded as disabled.  Plaintiff, therefore, was not entitled to an accommodation.

G.   Aiding and Abetting Disability Discrimination

Section 955(e) of the PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared

16

by this section to be an unlawful discriminatory practice ... ."
43 Pa. Con. Stat. § 955(e). Although plaintiff alleged
defendants Zimmerman and Cline aided and abetted UPS's
discriminatory treatment of him, he has adduced no evidence,
testimonial or otherwise, to support this claim. Accordingly,
the individual defendants' motion for summary judgment will be
granted.

IV. CONCLUSION

For the reasons set forth above, defendants' motion for
summary judgment, [Doc. No. 49], is GRANTED.

BY THE COURT:

cc: All Counsel of Record

17